Filed 7/24/15  P. v. Zavala CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JESUS ZAVALA,<br><br>        Defendant and Appellant. | C076293<br><br>(Super. Ct. No. 13F02709) |

This case comes to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Having reviewed the record as required by *Wende* and considered the supplemental brief submitted by defendant, we affirm the judgment.

We provide the following brief description of the facts and procedural history of the case.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

**FACTUAL AND PROCEDURAL BACKGROUND**

About 1:10 a.m. on April 29, 2013, defendant Jesus Zavala and his two cohorts confronted three homeless people, Mario Franco, Joe Franklin, and Ellen Campbell, on

the bike trail near El Camino Avenue. Defendant, wearing a black bandana covering his face, asked Franco if he was a Sureño. Franco was wearing clothing associated with Sureños but denied being a gang member. Defendant pulled out a gun and ordered the homeless group to the ground. Defendant's group robbed the homeless group of their belongings. In the process, defendant struck Franco in the head with the firearm. The robbers then fled. A nearby officer was immediately alerted. The officer saw two people running in one direction and defendant with his bandana on his face walking on the street. Defendant was ordered to the ground. Defendant claimed, " 'I be wearing this 'cuz [*sic*] these Scraps be fucking with us Nortenos out here. I got to represent, you [k]now.' " A search of defendant revealed a green pocket knife belonging to Franco and three cell phones and a cell phone battery belonging to Franklin. A witness observed defendant throwing an item into the backyard of a home. Officers retrieved a black BB gun from the backyard. Defendant was identified in an in-field show up by Campbell and Franco who both identified defendant at trial as well.

A gang expert testified about the Norteños gang's colors, symbols, criminal activities, and incidents to show a pattern of criminal activity. He explained that "Scraps" is a derogatory term for a Sureño gang member and that the Sureños are the enemies of the Norteños. The expert opined that defendant was an active Norteño at the time of the robberies. In response to hypothetical questions that mirrored the facts of this case, the expert opined that the robbery benefited the Norteño criminal street gang.

A jury convicted defendant of three counts of second degree robbery (Pen. Code, § 211) and sustained in connection with each count a gang enhancement (§ 186.22, subd. (b)(1)). The court sentenced defendant to state prison for an aggregate term of 19 years 4 months calculated as follows: count one, upper term of five years plus a consecutive 10-year term for the gang enhancement; count two, a consecutive one-third the midterm or one year for the offense plus three years four months for the enhancement; and count three, a concurrent term for the offense and enhancement. The

2

court awarded 341 actual days plus 51 conduct days (§ 2933.1) for a total of 392 days of presentence custody credit.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant filed a supplemental brief.

## DISCUSSION

### I. Uncharged Misconduct & Ineffective Assistance of Counsel

Defendant queries, "Why would the gang investigator need to bring up prior robbery charges/ass[a]ults and police contacts that had nothing to do w[ith] gangs and just influenced my jury to have doubts of innocence and having a negative impression of my history." Defendant complains that defense counsel had advised that defendant's priors were inadmissible "under any circumstances." Defendant also complains that defense counsel's performance was deficient in not ensuring that the gang expert was properly instructed not to discuss defendant's priors.

Citing Evidence Code sections 1101, subdivision (a), and 352, defendant moved in limine to exclude defendant's prior bad acts/convictions, specifically, defendant's prior juvenile adjudications for violating Penal Code sections 459, 211, and 245; defendant's misdemeanor convictions for violating Penal Code sections 242, 487, and 273.6; and defendant's prior felony conviction for violating Penal Code section 245. At the motion hearing, the prosecutor represented that he did not intend to present such evidence provided defendant did not testify. The court ruled that the issue would be revisited if defendant chose to testify.

Prior to the gang expert testifying, the prosecutor notified defense counsel via e-mail that the gang expert planned to testify about gang-related contacts in July 2011 involving defendant, that is, defendant's prior conviction for assaulting a victim after

3

being "disrespected" and defendant's prior arrest for a theft against a pizza delivery person while in the presence of three other Norteño gang members. In his e-mail, the prosecutor stated that they would have to resolve the issue before the gang expert testified. Thereafter, at trial, the prosecutor elicited the foregoing prior acts of defendant through the gang expert to show that defendant was an active member of the gang who still participated in acts to benefit the gang. Prior to cross-examination and outside the presence of the jury, defense counsel objected. Defense counsel admitted that he received the prosecutor's e-mail but said he had not read it in its entirety. Defense counsel argued the prior acts described in the e-mail would have been excluded as "too close" to the current charges. Although the trial court noted one incident involved an assault, not a robbery, that defense counsel did not object in a timely manner, and that a portion of both incidents was admissible, the trial court planned to strike the evidence and to instruct the jury not to consider it. The prosecutor argued that the evidence was admissible under Evidence Code section 352 but agreed with the trial court's plan, commenting the jury had heard "a ton" of evidence of defendant's gang membership and involvement but the jury would be able to disregard the objected-to evidence if so instructed. The trial court struck the objected-to evidence and instructed the jury to disregard it. We presume the jury followed the court's instruction to disregard the evidence. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) " 'Surmounting *Strickland*'s high bar is never an easy task.' " (*Harrington v. Richter* (2011) 562 U.S. 86, ___ [178 L.Ed.2d 624, 642], quoting *Padilla v. Kentucky* (2010) 559 U.S. 356, ___ [176 L.Ed.2d 284, 297].) To establish prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the

4

outcome of the proceeding.' " (*Richter*, at p. 642].)  To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient.  (*Strickland*, at pp. 693-694; *Ledesma*, at pp. 217-218.)

We conclude that any deficient performance by counsel was harmless given the defendant's failure to show prejudice.  There was extensive evidence of defendant's gang membership and gang activity, the victims identified him as one of the robbers, the victims' property was recovered from defendant shortly after the robbery, and a BB gun was found in the area where an eyewitness saw defendant throw something shortly before his arrest.

## II.  Other Claims Related to Defense Counsel

Defendant also complains in general about defense counsel's performance, claiming he showed a "lack of interest" in defendant's case, missed appointments, and failed to advise defendant in trial procedures/his defense.  Defendant believes that defense counsel and the prosecutor "used [his] ignorance as leverage."  The record does not support defendant's generic claims and we reject them.

## III.  Witness Testimony While Under the Influence

Defendant complains that the prosecutor presented Franco's testimony while Franco was under the influence of heroin.  Defense counsel elicited the fact that Franco had injected heroin the day of the robbery as well as the morning before his testimony at trial.  Franco explained that he had used heroin for 25 years and had done so for pain and to remain calm.  The fact of Franco's heroin usage was before the jury which had to determine whether Franco was credible.  Franco's testimony about the robbery was corroborated by Campbell.

## IV.  Joinder

Defendant next complains that "[a] joinder was not ever offered so one act was counted as three 211 armed robberies even though [one] victim had a record and showed

5

up to get on [the] stand 'under [the] influence' and wasn't credible; [third] victim [Franklin] didn't show at all an[d] had a warrant for drug sales and one item t[ak]en in the robbery that took place was a digital scale plus multiple phones!"

The charges were connected in their commission and properly joined under section 954.**1** There were three robberies committed at the same time -- three victims and each one was robbed of his/her belongings. Again, the credibility of the victims was for the jury to determine. Although Franklin did not testify at trial, Franco and Campbell testified that Franklin was present, was ordered to the ground at gunpoint just as they were, and robbed. After defendant was caught shortly after the robbery, an officer discovered items on defendant's person belonging to Franklin.

## V. Attorney Conflict

Defendant claims that his attorney had a "conflict of interest" which is "on camera" at the main jail. Defendant claims his attorney had two murder cases and that he considered defendant's case to be " 'bullshit.' " The record on appeal does not support defendant's claim and we reject it.

## VI. *Marsden/Farretta*[2]

Finally, defendant claims he was pressured to withdraw his motion to substitute counsel or to proceed pro per and "felt as if [he] had no choice but to continue." The record does not reflect a motion to substitute counsel. The record does reflect that during voir dire, defendant sought to represent himself. Defense counsel stated that defendant wanted "to go pro per," desiring "more time to spend with his case," and then he would "require or retain an attorney if he needs to." Acknowledging defendant had the right to

---

**1** Section 954 provides in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission . . . ."

**2** *People v. Marsden* (1970) 2 Cal.3d 118; *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

represent himself, the court explained the disadvantages of doing so. Defendant reconsidered and decided to have counsel continue to represent him. The record does not reflect coercion and we reject defendant's claim otherwise.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.[3]

## DISPOSITION

The judgment is affirmed.

      MURRAY      , J.

We concur:

      BLEASE      , Acting P. J.

      RENNER      , J.

---

[3] We denied defendant's request that defense appellate counsel be relieved and that the court provide him (defendant) with copies of the transcripts.